**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**THOMAS A. BLANTON, A. BRADDOCK BRAWNER,
DR. GEORGE R. JOINER, FRANK M. FLANDERS,
BOB LIPFORD, JACK T. GEIGER, MOON-HINES-TIGRETT
OPERATING CO., INC., ROBERT REED, TOMMY E.
ROBERTSON, GEORGE F. PESSONEY, EDDIE A. PETRO, JR.,
MARTHA JO HOWELL, CHARLES M. MEEKS,
JOSH MORRIS, III, ROBERT E. PETRO AND BRYAN SALIBA**          **PLAINTIFFS**


**VS.**                                            **CIVIL ACTION NO. 2:07cv103KS-MTP**


**EOG RESOURCES INC.**                                         **DEFENDANT**



**MEMORANDUM OPINION AND ORDER**

This matter is before the court on a Partial Motion to Dismiss filed on behalf of

the defendant **[#5]** and on a Motion to Strike filed on behalf of the plaintiffs **[#9, #14]**.

The court, having reviewed the motions, the responses, the pleadings and exhibits on

file and being otherwise fully advised in the premises finds that the partial motion to

dismiss should be denied and the that the motion to strike should be denied.   The court

specifically finds as follows, to-wit:



**FACTUAL BACKGROUND**

This action began as a complaint to enforce a settlement agreement in the

Chancery Court of Covington County, Mississippi on April 24, 2007.  The defendant

timely removed the action to this court pursuant to 28 U.S.C. § 1441 and § 1446

asserting diversity jurisdiction under 28 U.S.C. § 1332.  The court thus has jurisdiction

of the subject matter and the parties.

The plaintiffs' Complaint in state court asserts that the plaintiffs are members of and investment group (the "Blanton Group") which owns certain leasehold (drilling rights) and royalty interests in lands located in the South Williamsburg Field in Covington and Jefferson Davis Counties in Mississippi.  Effective May 27, 2003, the Blanton Group and the defendant entered into a Farmout Agreement ("Agreement") concerning the plaintiffs' interests in the subject oil field.  The plaintiffs assert in their Complaint that EOG offered very limited cooperation and performance of its obligations under the Agreement over its life and that there had been disagreements over the meaning of the terms and conditions and/or operation of the Agreement.

As a result of the disputes and disagreements over the Farmout Agreement and in an alleged effort to avoid costly litigation, the parties entered into a Settlement Agreement (characterized as an Amendment to the Farmout Agreement ) dated August 25, 2006.  According to the plaintiffs, it is this settlement agreement (or amendment to the Farmout Agreement) which the defendant breached leading to the institution of the instant complaint to enforce same wherein they have requested an accounting, damages for breach of contract and of the duty of good faith and fair dealing, punitive damages and attorney fees.

In response, the defendant, EOG, asserts that the Settlement Agreement/Amended Farmout Agreement was voluntarily terminated by the parties effective October 1, 2006, when they entered into a Purchase and Sale Agreement concerning the plaintiffs' interests in the subject field.  Defendant EOG agreed to purchase the plaintiffs' interests on October 23, 2006.  The sale was closed December

1, 2006, with a stated effective date of October 1, 2006.  The Purchase and Sale

Agreement contained a clause which the defendant claims prevents the plaintiffs from

pursuing any claims prior to the effective date of the Purchase Agreement.  Paragraph

12 of the Purchase and Sale Agreements provides:

> 12.  The Farmout Agreement between the parties dated May 27, 2003, as
> amended thereafter on August 25, 2006, and all AMI/renewal lease
> agreements or other previous agreements, between the parties shall be
> terminated upon the closing of this transaction, effective October 1, 2006.

The plaintiffs also assert that they are due certain overriding royalties for time

periods prior to October 1, 2006.  Once again, the defendant asserts that the Purchase

and Sale Agreement forecloses such a claim.  Paragraph 1 of that agreement provides,

in pertinent part:

> 1.  There shall be no adjustments beyond those set forth on the Final
> Distribution Statement for any time period prior to October 1, 2006.

Based on the foregoing, the defendant has moved to dismiss all of the plaintiffs'

Complaint, except the part asking for an accounting after October 1, 2006, for failure to

state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.


## STANDARD OF REVIEW

It is well settled that in ruling on a 12(b)(6) motion, the court may not go outside

the pleadings, specifically the complaint in this case.  "The Rule 12(b)(6) motion . . .

only tests whether the claim has been adequately stated in the complaint."  5A C.

WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1356 at

298 (1990).  As the Fifth Circuit has stated, "We may not go outside the pleadings.  We

accept all well-pleaded facts as true and view them in the light most favorable to the

Plaintiff.  We cannot uphold the dismissal 'unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Colle v. Brazos County, Texas*, 981 F.2d 237, 243 (5th Cir. 1993)(internal footnotes and citations omitted).  *See also,  Cinel v. Connick*, 15 F.3rd 1338, 1341 (5th Cir. 1994).

The plaintiffs have moved to strike certain evidentiary submissions offered by the defendant and/or convert the motion to dismiss to one for summary judgment.  Indeed, if the court considers matter outside the complaint, the motion must be converted to one for summary judgment.  Regarding such conversion, Rule 12(b) provides specifically;

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Thus, "[t]he element that triggers the conversion is a challenge to the sufficiency of the pleader's claim supported by extra-pleading material.  It is not relevant how the defense is actually denominated."  5A C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1366 at 485 (1990).  Further, as the Fifth Circuit has explained;

> The only way to test the merit of a claim if matters outside the bounds of the complaint must be considered is by way of motion for summary judgment.  In that event, even if a motion to dismiss has been filed, the court must convert it into a summary judgment proceeding and afford the plaintiff a reasonable opportunity to present all material made pertinent to a summary judgment motion by Fed.R.Civ.P. 56.  *Arrington v. City of Fairfield*, 414 F.2d 687 (5th Cir. 1969); 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1366 at 679 (1969).

4

*Murphy v. Inexco Oil Co*., 611 F.2d 570, 573 (5th Cir. 1980).  On a 12(b)(6) motion, of course, the court must view all well-pleaded facts as true and in the light most favorable to the non-moving party.  However, "once the proceeding becomes one for summary judgment, the moving party's burden changes and he is obliged to demonstrate that there exists no genuine issue as to any material fact and that he is entitled to judgment as a matter of law."  C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 1366 at 506 (1990).

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is

not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment

6

cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978).  In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982).  To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial.  Rule 56(e), Fed.R.Civ.P.  *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).

This matter is before the court on defendant's assertion that jurisdiction of this civil action is appropriate via complete diversity of the parties under 28 U.S.C. §1332(a)(1).  Thus Mississippi law is controlling on all substantive issues, and in this

case, construction of the contracts at issue.  *Erie R. Co. V. Tompkins*, 304 U.S. 64, 78-80 (1934); *Huss v. Gayden*, 465 F.3d 201, 205-06 (5th Cir. 2006).  Regarding this subject, the Mississippi Supreme Court has recently held that

> We are reminded that "[t]he primary purpose of all contract construction principles and methods is to determine and record the intent of the contracting parties." *Facilities, Inc. v. Rogers–Usry Chevrolet, Inc.*, 908 So.2d 107, 110 (Miss.2005) (quoting *Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc.*, 857 So.2d 748, 752 (Miss.2003)).  In order to determine and record the intent of the contracting parties, we focus upon the objective language of the contract.  *Id.* at 110–111.  Additionally, concerning the construction of contracts, this Court has consistently stated:
>
>> This Court has set out a three-tiered approach to contract interpretation.  *Pursue Energy Corp. v. Perkins*, 558 So.2d 349, 351-53 (Miss.1990).  Legal purpose or intent should first be sought in an objective reading of the words employed in the contract to the exclusion of parol or extrinsic evidence.  [*Cooper v. Crabb*, 587 So.2d 236, 241 (Miss.1991)....]  First, the "four corners" test is applied, wherein the reviewing court looks to the language that the parties used in expressing their agreement.  *Pursue Energy Corp.*, 558 So.2d at 352 (citing *Pfisterer v. Noble*, 320 So.2d 383, 384 (Miss.1975)).  We must look to the "four corners" of the contract whenever possible to determine how to interpret it.  *McKee v. McKee*, 568 So.2d 262, 266 (Miss.1990).  When construing a contract, we will read the contract as a whole, so as to give effect to all of its clauses.  *Brown v. Hartford Ins. Co.*, 606 So.2d 122, 126 (Miss.1992).  Our concern is not nearly so much with what the parties may have intended, but with what they said, since the words employed are by far the best resource for ascertaining the intent and assigning meaning with fairness and accuracy.  *Simmons v. Bank of Miss.*, 593 So.2d 40, 42-43 (Miss.1992).  Thus, the courts are not at liberty to infer intent contrary to that emanating from the text at issue.  *Id.* (citing *Cooper*, 587 So.2d at 241).  On the other hand, if the contract is unclear or ambiguous, the court should attempt to "harmonize the provisions in accord with the parties' apparent intent." *Pursue Energy Corp.*, 558 So.2d at 352.  Only if the contract is unclear or ambiguous can a court go beyond the text to determine the parties' true intent.  *Id.*  "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." *Turner*, 799 So.2d at

32; *Cherry v. Anthony*, 501 So.2d 416, 419 (Miss.1987).

Secondly, if the court is unable to translate a clear
understanding of the parties' intent, the court should apply
the discretionary "canons" of contract construction. *Pursue
Energy Corp.*, 558 So.2d at 352.  Where the language of an
otherwise enforceable contract is subject to more than one
fair reading, the reading applied will be the one most
favorable to the non-drafting party.  *Leach v. Tingle*, 586
So.2d 799, 801-02 (Miss.1991) (citing *Stampley v. Gilbert*,
332 So.2d 61, 63 (Miss.1976)).  Finally, if the contract
continues to evade clarity as to the parties' intent, the court
should consider extrinsic or parol evidence.  [*Pursue Energy
Corp.*, 558 So.2d at 353].  It is only when the review of a
contract reaches this point that prior negotiation,
agreements and conversations might be considered in
determining the parties' intentions in the construction of the
contract.

*Royer*, 857 So.2d at 752–53 (emphasis added).

*Facilities, Inc.*, 908 So.2d at 111

*One South, Inc. v. Hollowell*, 963 So.2d 1156, 1162-63 (Miss. 2007).

## <u>ANALYSIS</u>

The plaintiffs assert that there has been limited discovery in this matter,

consisting of the documents attached to the Complaint as well as initial disclosures filed

by EOG.  The plaintiffs state that on May 25, 2007, EOG filed with this court its Answer

and Partial Motion to Dismiss and attached two (2) exhibits.  Exhibit "A" is a letter from

EOG Resources, Inc. to the Working Interest Owners dated October 23, 2006, and

Exhibit "D" is a Partial Assignment of Oil, Gas and Mineral Lease for Coulter 21-8 No. 1

Well.  These documents were included in Defendant EOG's initial disclosures.

In their initial response to EOG's Partial Motion to Dismiss, the Blanton Group

objected, pursuant to Rule 56, to the inclusion of documents outside of the pleadings filed with the defendant's Answer and Partial Motion to Dismiss.  Specifically, the plaintiffs objected to the inclusion of the Purchase and Sale Agreement as not properly authenticated.  In the alternative, they argued that if the PSA was considered by the court, the motion to dismiss should be converted to a motion for summary judgment.

On June 15, 2007, EOG filed its Reply Brief in Support of its Motion to Dismiss with an additional exhibit attached as Exhibit "A" which the plaintiffs assert is a letter from Bill Blair, counsel for EOG, to Stan Ingram, counsel for the Blanton Group, dated December 19, 2006.  They stress that this letter is not part of EOG's initial disclosures nor is it supported by affidavit.  However, the letter is actually from Ingram, counsel for the plaintiffs, to Blair, counsel for EOG.  The plaintiffs' argument that this letter should be stricken, for the reasons asserted, is disingenuous and without merit.

Further, the plaintiffs have admitted that the PSA represents a valid agreement between the parties, albeit entered into later in time than the Settlement Agreement. They, however, deny that it had the legal effect of terminating any vested rights of the plaintiffs derived from the initial Farmout Agreement as amended by the Settlement Agreement.  The plaintiffs then argue that presentation of the PSA is "premature" and "creates contract construction and disputed factual issues between the parties . . . ." The plaintiffs have also objected to the defendant's alleged unsupported factual assertions in its Partial Motion to Dismiss and Reply Brief which allegedly address the dealings between the parties as hearsay under F.R.E. 802.

EOG asserts that all interests of the plaintiffs in the subject properties were purchased by it pursuant to the terms of the PSA and that all prior obligations between

the parties as related to the Farmout Agreement and the amendment thereto (the Settlement Agreement) were resolved by this purchase.  Thus, the only relief the defendant claims the plaintiffs are entitled to, of those demanded, is for an accounting of monies due after the effective sale date of October 1, 2006.

To the contrary, the plaintiffs assert that they had certain vested rights in the Farmout Agreement and its amendment which predate and survive the PSA.  Among these vested rights are overriding royalty interest payments from certain wells which the plaintiffs claim they have never received.  This, of course, flies in the face of the defendant's argument that the language of the PSA explicitly provides that all issues relating to the subject properties is resolved by virtue of EOG's purchase of the plaintiffs's interests therein.

However, the plaintiffs point the court to the specific reservation of certain overriding royalty interests reserved unto them by the PSA.  Paragraph 10 of the PSA provides that "As to the Baggett, Brumbaugh, and Knight 21-5 Units, Seller shall retain all of its existing overriding royalty interest."  Further, the assignment which implemented the terms of the PSA provides that "Assignors reserve their existing overriding royalty interests in the units described on Exhibit "C" for the Baggett and Brumbaugh Units."

Thus, after a careful review of the facts of this case, it is clear that the plaintiffs have reserved unto themselves certain interests which may entitle them to seek the relief requested in the complaint.  This is not determination of the merits of those claims, only a recognition that potential claims have been asserted when the court views the matter in the light most favorable to the plaintiffs under a dismissal analysis.

11

Equally true, the plaintiffs have shown genuine issues of factual dispute regarding the PSA and its interpretation relative to the Farmout Agreement and amendment in light of the reservation of overriding royalty interests by the plaintiffs.  Thus, based on the limited discovery and the evidentiary submissions considered, the court cannot find that the defendant is entitled to judgment as a matter of law.

IT IS THEREFORE ORDERED AND ADJUDGED that the Partial Motion to Dismiss filed on behalf of the defendant **[#5]** and the Motion to Strike filed on behalf of the plaintiffs **[#9, #14]** and all other pending motions to strike or for other relief predating this ruling are denied.

SO ORDERED AND ADJUDGED this the 24th day of January, 2008.


*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE